# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

DION KIRK HUMPHREY,

                Plaintiff,

     v.

RENEE STRAUBE, Protective Service
Specialist 1, JULIETTE ROSADO, MS
Clinical Therapist, ALASKA OFFICE
OF CHILDREN SERVICES, and
NORTHSTAR BEHAVIORAL
HEALTH,

                Defendants.

Case No. 3:22-cv-00009-SLG

## <u>ORDER OF DISMISSAL</u>

Before the Court are two dispositive motions: (1) Defendants State of Alaska, Department of Family and Community Services, Office of Children's Services' and Renee Straube's ("State Defendants") *Motion to Dismiss* at Docket 46 and (2) Defendants Frontline Hospital d/b/a as North Star Hospital[1] and Juliette Rosado's ("North Star Defendants)" *Motion to Dismiss* at Docket 48. The State Defendants move to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). The North Star Defendants move to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mr. Humphrey responded in opposition to both motions at Docket 49.

---

[1] The Court notes the correct spelling of North Star Hospital.

The State Defendants replied at Docket 50; the North Star Defendants replied at Docket 51. During the pendency of briefing, Mr. Humphrey filed an additional motion titled *Plaintiff's Request for Judicial Notice in Support of Plaintiff's Reply to Defendant's Motion to Dismiss in Accordance to Fed. R. Evid. 201(e)* at Docket 52. Neither the State Defendants nor the North Star Defendant filed a response.[2] All three matters are ripe for the Court's consideration. For the reasons stated herein, the *Motions to Dismiss* at Dockets 46 and 48 are each **GRANTED**, and the *Request for Judicial Notice* at Docket 52 is **DENIED**.

## I. BACKGROUND

### A. Procedural History

On January 13, 2022, Mr. Humphrey, a self-represented litigant, filed a *Complaint for a Violation of Civil Rights*, naming Renee Straube and Juliette Rosado as defendants.[3] The Complaint alleged, in its entirety, the following claim: "'Familial Integrity' Due Process Clause Fourteenth Amendment." At Docket 6, the Court issued a 15-page Screening Order. The order explained how the Complaint was deficient, as a complaint must set out a claim for relief that identifies "(1) the specific harm that Plaintiff is alleging has occurred to him, (2) when that harm occurred, (3) where that harm was caused, and (4) who he is alleging caused that

---

[2] *See docket generally.*

[3] Docket 1.

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 2 of 29

specific harm."[4] The order also explained how a necessary predicate to maintaining an action in federal court under 42 U.S.C. § 1983 is that a defendant must have been acting under color of state law, and "[t]he Complaint does not provide sufficient detail about either defendant to determine whether Defendants Straube or Rosado are state actors."[5] The order also provided information about the elements of a claim for interference with the parent/child relationship and discussed the difference between suing a defendant in the person's individual versus official capacity. The Screening Order dismissed the Complaint but granted leave to file an amended complaint, and denied all pending motions.[6]

At Docket 7, Mr. Humphrey filed a First Amended Complaint ("FAC"), again alleging that Defendants Straube and Rosado violated his Fourteenth Amendment Due Process right to familial integrity under 42 U.S.C. § 1983. The FAC named as additional defendants the State of Alaska Office of Children's Services ("OSC") and Northstar Behavioral Health.[7] In an attachment to the FAC, Mr. Humphrey provided some of the underlying facts regarding his claim, asserting that his minor son, E.H., had been unlawfully held at Northstar Behavioral Health for over seven months, beginning on or about October 7, 2021, and that Renee Straube, a social

---

[4] Docket 6 at 3.

[5] Docket 6 at 4.

[6] Docket 6 at 2–15.

[7] Docket 7 at 1–3.

worker at OCS, had testified at a Child in Need of Aid proceeding that E.H. had been physically abused and neglected by Mr. Humphrey, notwithstanding that there was "unsubstantiated evidence of fact" that the child had actually been neglected or abused.[8]

At Docket 10, the Court issued an Order Directing Service and Response and denied Mr. Humphrey's motion for the appointment of counsel.[9] Motions to dismiss the First Amended Complaint were filed by the State Defendants and the North Star Defendants at Dockets 19 and 24, respectively. After briefing was completed,[10] the Court, in an order filed on September 29, 2023, dismissed Defendant OCS with prejudice because of Eleventh Amendment state sovereign immunity, and dismissed the remaining defendants without prejudice pursuant to Rule 12(b)(6).[11] In that order, the Court provided Mr. Humphrey with the following direction:

> Mr. Humphrey may file a Second Amended Complaint within 30 days of this Order. An amended complaint replaces the prior complaint in its entirety. All factual allegations must be pled in accordance with Rule 8 of Federal Civil Procedure. Mr. Humphrey will need to submit any exhibits with his Second Amended Complaint.

---

[8] Docket 7-1 at 1.

[9] Docket 10; *see also* Dockets 8 & 9.

[10] Dockets 20, 21, 22, 26, & 30

[11] Docket 43 at 9, 13, 16, 18–19.

Exhibits should be chosen thoughtfully and support any written factual allegations.[12]

**B. Second Amended Complaint**

Mr. Humphrey filed his SAC on October 12, 2023.[13] The SAC names four defendants: (1) OCS,( 2) Renee Straube, (3) North Star Behavior[al] Health, and (4) Juliette Rosado.[14] Mr. Humphrey contends that the defendants violated 18 U.S.C. § 242 and his right to "'FAMILIAL INTEGRITY' Due Process Violation of the Fourteenth Amendment" under 42 U.S.C. § 1983, in their individual and official capacities.[15] Mr. Humphrey alleges that on October 7, 2021,

> ROSADO employed by Northstar Behavior[al] Health 'unlawfully' communicated with OCS/STRAUBE by 'joint participation' in a TDM meeting 'prior' to the Superior Court 'unsubstantiated' emergency custody order which 'misrepresented' the truth of Physical abuse and Neglect in the finding of probable cause resulting in the loss of E.H. for seven months depriving Plaintiff and son of their fundamental constitutional and statutory rights.[16]

Mr. Humphrey describes his injuries as "[m]ental [a]nguish and [e]motional [d]istress to not financially afford needed medical treatment and Plaintiff's son EH

---

[12] Docket 43 at 19.

[13] Docket 44.

[14] Docket 44 at 2–3.

[15] Docket 44 at 3.

[16] Docket 44 at 4. TDM is not an articulated acronym in the parties' filings. The Court assumes without deciding that TDM likely is shorthand for "team decision meeting."

Case 3:22-cv-00009-SLG   Document 59   Filed 08/21/24   Page 5 of 29

is presently receiving [m]ental [h]ealth [c]ounseling."[17] For relief, Mr. Humphrey requests: (1) nominal damages of $7,000,000.00; (2) compensatory and general damages of $7,000,000.00; and (3) punitive damages of $7,000,000.00.[18]

With the SAC, Mr. Humphrey provided three exhibits.[19] Docket 44-1 is an order from the Alaska Superior Court dated June 8, 2022, which released E.H. from state custody back to the care of Mr. Humphrey and closed the Child in Need of Aid action. Docket 44-2 is a notice dated January 6, 2023, filed by OCS in an administrative appeal before the Office of Administrative Hearings ("OAH"). The notice informs the OAH that OCS had changed its previous findings that Mr. Humphrey had neglected E.H. to "Not Substantiated."[20] In the notice, OCS states it "is not able to defend findings brought forward 162 days after the original notice . . . due to lack of witness availability and the inability to subpoena witnesses."[21] OCS also defends its prior determination that "it [was] necessary to modify the finding of physical abuse," after OCS reviewed the appeal for "just cause or mitigating circumstances."[22] Because "there [were] no longer substantiated

---

[17] Docket 44 at 5.

[18] Docket 44 at 5.

[19] Docket 44-1 (Exhibit B); Docket 44-2 (Exhibit C); Docket 44-3 (Exhibit D).

[20] Docket 44-2 at 1.

[21] Docket 44-2 at 1.

[22] Docket 44-2 at 1–2.

findings to dispute, OCS request[ed] the matter to be dismissed."[23]  Docket 44-3 is OAH's Order of Dismissal dated January 10, 2023, dismissing the administrative appeal as moot.

## II.  LEGAL STANDARDS

### A.      Rule 12(b)(1) – Subject Matter Jurisdiction

A lack of subject matter jurisdiction necessitates dismissal under Federal Rule of Civil Procedure 12(b)(1).  When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1), "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."[24]  As such, the plaintiff asserting that this Court has subject matter jurisdiction has the burden of proving its existence.[25]

### B.      Rule 12(b)(6) – Failure to State a Claim

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim for which relief can be granted."  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[23] Docket 44-2 at 1.

[24] *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (quotation and citation omitted).

[25] *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773–74 (9th Cir. 2017); *Laborers' Int'l Union of N. Am., Local 341 v. Main Building Maint., Inc.*, 435 F. Supp. 3d 995, 999 (D. Alaska 2020).

on its face.'"[26]   Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[27]   Factual allegations must not be speculative; rather, they must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28]   While a complaint need not contain every precise, factual detail, "unadorned, the defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a claim.[29]

### C.  42 U.S.C. § 1983

To state a claim for relief under Section 1983, a plaintiff must allege plausible facts that, if proven, would establish (1) the defendant acting under color of state law (2) deprived the plaintiff of rights secured by the federal Constitution or federal statutes.[30]   A defendant acts under the color of state law when acting with state authority as a state actor.[31]   To be deprived of a right, the defendant's action needs to either violate rights guaranteed by the Constitution or an enforceable right

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[27] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[28] *Ashcroft*, 556 U.S. at 678.

[29] *Id.*

[30] *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

[31] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 8 of 29

created by federal law.[32]  Section 1983 does not confer constitutional or federal statutory rights.  Instead, it provides a mechanism for remedying violations of pre-existing federal rights.[33]

## III. DISCUSSION

### A.  Request for Judicial Notice of the First Amended Complaint

At Docket 52, Mr. Humphrey requests the Court take judicial notice of his SAC.  But the SAC is the complaint presently under consideration with respect to the pending motions to dismiss; hence,  judicial notice of it is redundant and unnecessary.

With respect to the previously filed FAC, Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[34]

A court can take judicial notice of its own files and records when appropriate.  That is not the case here.  As the Court previously informed Mr. Humphrey: "An amended complaint replaces the prior complaint in its entirety."[35]  "As a general

---

[32] *Buckley v. City of Redding*, 66 F. 3d 188, 190 (9th Cir. 1995); *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997).

[33] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

[34] Fed. R. Evid. 201(b).

[35] Local Civil Rule 15.1.

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 9 of 29

rule, when a plaintiff files an amended complaint, 'the amended complaint supersedes the original, the latter being treated thereafter as non-existent.'"[36]  Mr. Humphrey cites to several out of circuit opinions addressing how courts should liberally interpret pleadings from self-represented litigants.[37]  While this Court liberally construes pleadings by self-represented plaintiffs, the procedural rules that govern all litigants apply.[38]  Accordingly, the Court will not take judicial notice, or otherwise incorporate the FACC, because the SAC replaced it in its entirety. Rather, the Court limits its review  to only the allegations in the SAC and its attachments.[39]  Therefore, *Plaintiff's Request for Judicial Notice in Support of Plaintiff's Reply to Defendant's Motion to Dismiss in Accordance to Fed. R. Evid. 201(e)* at Docket 52 is **DENIED**.

### B. 18 U.S.C. § 242

Neither the State Defendants nor the North Star Defendants address Mr. Humphrey's claim under 18 U.S.C. § 242.[40]  Therefore, the Court addresses the claim *sua sponte*.  18 U.S.C. § 242 is a criminal statute; criminal statutes do not

---

[36] *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (alterations omitted) (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).

[37] Docket 55 at 1–2.

[38] *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).

[39] *See Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019).  In evaluating the motions to dismiss, the Court also considered the exhibits include with Mr. Humphrey's response to the motions at Docket 49.  *See* discussion *infra* sections C and D.

[40] *See* Docket 46; Docket 47; Docket 48.

provide a basis for civil liability.[41]  Mr. Humphrey may not bring a civil claim under

18 U.S.C. § 242.  Therefore, this claim must be dismissed with prejudice against

all Defendants.

### C. State Defendants' Motion to Dismiss

#### a.  Defendant OCS

The State Defendants assert that Mr. Humphrey is barred from repleading

his claim against OCS because that Defendant was dismissed with prejudice in

the Court's prior order at Docket 43.  Mr. Humphrey does not address that

argument in his response.[42]  The Court's prior order recognized that OCS is an

arm of the State of Alaska and, thus, is not a "'person' for purposes of Section

1983," because Eleventh Amendment sovereign immunity applied.[43]  Because the

Court previously dismissed OCS with prejudice from the action, Mr. Humphrey

cannot renew his claim against OCS.[44]  The State Defendants' Motion to Dismiss

at Docket 46 is **GRANTED** as to OCS.  Mr. Humphrey shall not name OCS as a

Defendant if he elects to file a third amended complaint.

---

[41] *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

[42] *See* Docket 49.

[43] Docket 43 at 9. Shortly after the issuance of Docket 43, the Ninth Circuit Court of Appeals issued its decision in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc) articulating a new three-part test for evaluating when an entity is an arm of the state for Eleventh Amendment immunity purposes.  Recognizing this change in law, the Court notes that OCS is clearly an arm of the state under the Circuit's updated three-factor test.

[44] Fed. R. Civ. P. 41(b).

b. <u>Defendant Straube</u>

Mr. Humphrey's SAC alleges that Ms. Straube communicated with Ms. Rosado "in a TDM meeting prior to the Superior Court['s] unsubstantiated emergency custody order which misrepresented the truth of Physical abuse and neglect in the find of probable cause[.]"[45]  The State Defendants assert that the SAC is insufficient to establish a "cognizable legal theory" and the SAC's exhibits do not mention Ms. Straube.[46]  In response, Mr. Humphrey states that Ms. Straube misrepresented evidence at the October 26, 2021 probable cause hearing and that the state "courts would have declined the Emergency Custody order had [Ms. Straube] been truthful."[47]  Further, Mr. Humphrey alleges that Ms. Straube "acted 'malicious' and by 'unlawful' contact with Northstar Behavior[al] Health employees on September 30, 2021, and October 1, 2021 . . . regarding E.H[.] sons hospital discharge" and cites to the Due Process Clause of the Fourteenth Amendment and an unreported case from the Third Circuit.[48]  Mr. Humphrey contends that the Court should deny the State Defendants' Motion to Dismiss, because "Defendants are familiar with the 'gist' of the complaint and fail to answer the issue pertaining to

---

[45] Docket 44 at 4.

[46] Docket 47 at 4–5.

[47] Docket 49 at 1.

[48] Docket 49 at 2 (citing *Pulice v. Encisco*, 39 Fed. App'x. 692, 696 (3rd Cir. 2002)).

'misrepresented evidence not of fact[.]'"[49]  Mr. Humphrey's response brief includes five additional exhibits, which appear to be Ms. Straube's case notes[50] and the case history section from a writ of mandamus filed by Mr. Humphrey in state court.[51] In their reply, the State Defendants maintain that the SAC's allegations and exhibits fail to sufficiently state a claim that Ms. Straube deliberately or recklessly misrepresented evidence at the October 26, 2021, Child in Need of Aid hearing.[52]

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, and property, without due process of law."[53]  Among "the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court" is "the fundamental right of parents to make decisions concerning the care, custody, and control of their children."[54]  While the Supreme Court grounds this right in the Due Process Clause of the Fourteenth Amendment, other courts, including the Ninth Circuit Court of Appeals, have relied on the First and Fourth Amendments as well.[55]  "Despite the differing constitutional sources of the right to

---

[49] Docket 49 at 2.

[50] Docket 49-1; Docket 49-2; Docket 49-3; Docket 49-4.

[51] Docket 49-5.

[52] Docket 50 at 2.

[53] U.S. Const. amend. XIV, § 1.

[54] *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (plurality opinion).

[55] *Scanlon v. Cty. of Los Angeles*, 92 F.4th 781, 798–99 (9th Cir. 2024).

familial association, [the Ninth Circuit has] held that the 'same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children."[56]

Liberally construed, the SAC appears to allege that Ms. Straube interfered with the parent-child relationship by judicial deception. It is clearly established that "parents and children have a right to be free from judicial deception in child custody proceedings and removal orders."[57]  To sufficiently plead a judicial deception claim, a plaintiff must allege "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision."[58]  "A misrepresentation or omission is material if a court would have declined to issue the order had [the defendant] been truthful."[59]

The Ninth Circuit's recent decision in *Scanlon v. County of Los Angeles* elaborated on these elements.  Judicial deception may be caused by "deliberate omission or affirmative misrepresentation."[60]  "A statement can also be misleading if, although technically true, it has been so wrenched from its context that the judicial officer will not comprehend how it fits into the large puzzle."[61]   "Even

---

[56] *Id.* at 799 (quoting *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018)).

[57] *Scanlon*, 92 F. 4th at 799 (citations and internal quotations omitted).

[58] *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022).

[59] *Id.* (internal quotations and citation omitted).

[60] *David*, 38 F.4th at 801 n.3.

[61] *Scanlon*, 92 F.4th at 799.

otherwise true observations made misleading by the omission of facts that are not themselves material may result in an affidavit that, considered as a whole, is materially misleading."[62] In *Scanlon*, the Circuit found that the sworn statements made by a social worker to the court in a removal warrant application were inconsistent with the facts as then known to the social worker in numerous respects. Further, the Circuit found that a reasonable jury could conclude that the same social worker had misrepresented statements made by the child's teacher in the social worker's sworn statement to the court. "Either set of statements could reasonably be held material to [the court's finding of probable cause and] issuance of a warrant" that removed the children from their parents' care.[63]

Mr. Humphrey directs the Court's attention to Ms. Straube's actions on October 25, 2021. Ms. Straube activity notes on that date show that she (1) delivered a petition for state custody to E.H.'s mother; (2) called Mr. Humphrey and told him that OCS "was filing for custody of [E.H.]"; (3) attempted to deliver the petition to Mr. Humphrey's home; (4) called Mr. Humphrey, explained "there was a court hearing for the state to take custody" of E.H. the next day, and asked to meet him to deliver the petition; and (5) when Mr. Humphrey refused, she texted him the time and phone line for the custody hearing.[64] Ms. Straube's notes also

---

[62] *Id.*

[63] *Id.* at 805.

[64] Docket 49-4.

reflect that a state court granted OCS temporary custody of E.H.[65]  However,

neither the SAC nor the additional exhibits that Mr. Humphrey included with his

response to the motions to dismiss, include the CINA petition, a transcript of the

October 26, 2021 hearing, or the temporary custody order issued on October 26,

2021. While Mr. Humphrey alleges that Ms. Straube "'misrepresented' evidence of

facts(s) in a Child in Need of Aid hearing on October 26, 2021,"[66] he fails to identify

what statements Ms. Straube made to the Court that she knew were false or

deliberately disregarded their truth at that time.

Liberally construed and accepting the allegations and exhibits as true, Mr.

Humphrey fails to state a claim for judicial deception.  Even if the Court accepts

that Ms. Straube made a misrepresentation to the state court as to whether E.H.

had been physically abused or neglected, the SAC and the response do not

demonstrate that she testified at that time with a deliberate or reckless disregard

for the truth.  The fact that several months later, OCS determined the allegations

of physical abuse and/or neglect were unsubstantiated does not establish that Ms.

Straube was deceptive to the state court in October 2021.  Rather, the facts in the

record as of that time were consistent with a probable cause finding of physical

abuse or neglect.  As articulated at Docket 49-5, Mr. Humphrey called for police

assistance with E.H. on September 7, 2021, and officers contacted OCS.  On or

---

[65] Docket 49-4 at 1.

[66] Docket 49 at 1.

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 16 of 29

before September 30, 2021, Ms. Straube became the OCS worker assigned to address Protective Services Report No. 1303882.[67] The activity notes demonstrate that Ms. Straube maintained communication with North Star Hospital's discharge and clinical staff and E.H.'s parents.[68] In October 2021, Ms. Straube received a report of physical abuse from a mandatory reporter of child abuse, Ms. Rosado.[69] Immediately following, Ms. Straube arranged a team decision meeting,[70] and ultimately Ms. Straube, on behalf of OCS, filed a petition to obtain temporary custody of E.H.[71]

Mr. Humphrey provides the Court with evidence that: (1) Ms. Straube spoke to Ms. Rosado and other North Star Hospital workers;[72] (2) many months later, OCS changed its findings of physical abuse and neglect to unsubstantiated;[73] and (3) Mr. Humphrey prevailed on his appeal against OCS.[74] However, none of these facts, even if proven, would demonstrate that Ms. Straube made false statements or material omissions to the state court with a deliberate or reckless disregard for

---

[67] *See* Docket 44-3 at 1; *see also* Docket 49-1.

[68] Docket 49-1; Docket 49-2; Docket 49-3; Docket 49-4.

[69] Docket 49-3 at 2; *see also* discussion *infra* section D.

[70] Docket 49-3 at 1–3.

[71] Docket 49-4 at 1.

[72] Docket 49-1; Docket 44-2; Docket 44-3; Docket 44-4.

[73] Docket 44-2; Docket 44-2.

[74] Docket 44-3.

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 17 of 29

the truth on October 26, 2021. At its core, reckless disregard requires a plaintiff to demonstrate that at that time of the social worker's testimony, the social worker knew or should have known a material fact and either misrepresented that fact or declined to bring that fact to the court's attention.[75] Later acquired information, learned after the social worker's testimony, cannot form the basis of a fabrication of evidence claim. For the foregoing reasons, the SAC fails to sufficiently allege how Ms. Straube recklessly disregarded the truth as known to her at that time and deceived the state court in either the CINA petition or her testimony on October 26, 2021.

Accordingly, Mr. Humphrey again fails to state a claim against Ms. Straube. The State's Motion to Dismiss at Docket 46 is **GRANTED** as to Ms. Straube; however, the Court grants one final leave to amend as to this Defendant only.

### D. North Star Defendants' Motion to Dismiss

In the SAC, Mr. Humphrey alleges that Ms. Rosado "employed by Northstar Behavior[al] Health 'unlawfully' communicated'" with OCS and Ms. Straube by participating in a "TDM meeting" held prior to when the Superior Court issued an emergency custody order.[76] The North Star Defendants assert that this is (1) an unsupported conclusory allegation; (2) North Star and Ms. Rosado are not liable

---

[75] *Scanlon*, 92 F.4th at 799–805. *See also David*, 38 F.4th at 801–02; *Benavidez v. Cty of San Diego*, 993 F.3d 1134, 1147–48; *David v. Betts*, Case No. 20-00002 JMS-WRP, 2024 WL 2214613, at *20–24 (D. Haw. May 15, 2024).

[76] Docket 44 at 4.

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 18 of 29

Case 3:22-cv-00009-SLG   Document 59   Filed 08/21/24   Page 18 of 29

under § 1983 because they are neither state actors nor violated Mr. Humphrey's constitutional right; and (3) Ms. Rosado abided by the mandatory reporting requirements of Alaska state law.[77] In response, Mr. Humphrey alleges that Ms. Rosado, "employed by Northstar Behavior Health," "had no legal authority to communicate any decisions of Plaintiff" on October 7, 2021.[78] He further responds that Ms. Rosado "reported several 'conclusory statements'" of physical abuse to Ms. Straube, who then presented them at an emergency custody hearing.[79] Mr. Humphrey's attaches Ms. Straube's activity notes and entries for phone calls between Ms. Straube and Ms. Rosado on October 7 and 10, 2021 with his opposition.[80] In their reply, the North Star Defendants reiterate that Ms. Rosado is not a state actor subject to liability under Section 1983 and Mr. Humphrey's SAC fails to state a claim against them.[81]

Under 42 U.S.C. § 1983, a plaintiff can only bring claims against a defendant who "committed the alleged [violation] while acting under the color of state law."[82] A defendant acts under the color of state law when acting with state authority as a

---

[77] Docket 48 at 7–16.

[78] Docket 49 at 1.

[79] Docket 49 at 1.

[80] Docket 49-3 at 2–4.

[81] Docket 51.

[82] *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020).

state actor.[83]  A defendant has acted under color of state law when he or she has "exercised power 'possessed by the virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[84]  Private citizens or entities are not typically proper defendants for a Section 1983 action, because they "are not generally acting under color of state law."[85]

A private party can be subject to suit under Section 1983 for violating a plaintiff's civil rights only in narrow circumstances.  Courts use four different tests to determine whether a private person or entity acted with state authority:  "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus."[86]  Only one of the tests needs to be satisfied for a court to find that a private party acted under the color of state law.[87]  The Ninth Circuit, following the United States Supreme Court, explains that, "[s]pecifically, a plaintiff must show that 'the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State.'"[88]

---

[83] *West v. Atkins,* 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[84] *Id.* (quoting *Classic*, 313 U.S. at 326); *see also Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir. 1979) (establishing that when state officials are administering a federal funded program, the state officials are still acting under color of state law).

[85] *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Price v. Hawaii*, 939 F.2d 702, 708–708 (9th Cir. 1991).

[86] *Rawson*, 975 F.3d at 747 (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)).

[87] *Kirtley*, 326 F.3d at 1092; *see also Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002).

[88] *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (alteration in original) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

a. North Star Hospital

Without discussing its corporate structure, North Star Defendants contend that the hospital is not a state actor.[89] As a preliminary matter, the Court takes judicial notice of the following publicly available facts about North Star Hospital.[90] First, North Star Hospital is owned and operated by Frontline Hospital, LLC, a subsidiary of Universal Health Services, Inc., a Pennsylvania-based corporation.[91] Second, in 2002, the State of Alaska issued a business license to Frontline Hospital, LLC, doing business as North Star Hospital.[92] As such, these public records demonstrate that North Star is a private, not a public, hospital.

The SAC's sole allegation against North Star Hospital is that it employed Ms. Rosado.[93] But an entity "cannot be held liable under § 1983 on a *respondeat superior* theory."[94] And the SAC does not articulate, expressly or liberally construed, how any conduct by North Star Hospital transformed it into a state actor liable under § 1983. Accordingly, North Star Hospital must be dismissed from this

---

[89] Docket 58 at 8–9.

[90] Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." *Judicial Notice, Black's Law Dictionary* (11th ed. 2019); *see also* Fed. R. Evid. 201.

[91] Universal Health Services, Inc., Annual Report, Ex. 21 (Form 10-K) (Feb. 27, 2024).

[92] State of Alaska, Dept. of Commerce, Community, and Economic Development, *Division of Corporations, Business & Professional Licensing Database*, https://www.commerce.alaska.gov/cbp/businesslicense/search/License, (last accessed July 25, 2024).

[93] *See* Dockets 44 at 4; Docket 49 at 1.

[94] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 21 of 29

action.

      b.  <u>Ms. Rosado</u>

Mr. Humphrey appears to assert that Ms. Rosado, a North Star Hospital employee, took "joint action" with Ms. Straube.[95]   The joint action test "can be satisfied by proving existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents."[96]   "This occurs when a state official has substantially cooperated in the unconstitutional act of a private entity and the state has knowingly accepted the benefits derived from the unconstitutional behavior."[97]   Plainly, this standard requires that a plaintiff demonstrate "the existence of an agreement or meeting of the minds"—a "common objective" is insufficient.[98]   And "[g]enerally, private doctors and hospitals are not considered to be state actors."[99]

Mr. Humphrey included with his response brief OCS activity note records reflecting conversations between Ms. Straube, the discharge department of North

---

[95] Docket 49 at 1.

[96] *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (internal citations and quotations omitted).

[97] *Webber v. First Student, Inc.*, 928 F. Supp.2d 1244, 1259 (D. Or. 2013) (internal citations omitted).

[98] *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440–41 (9th Cir. 2010).

[99] *Morrison v. Billings Clinic*. Case No. CV-23-109-BLG-SPW, 2023 WL 11015603, at *4 (D. Mont. Nov. 27, 2023) (relying on *Briley v. State of Cal.,* 564 F.2d 849, 855-56 (9th Cir. 1977)).

Star Hospital, and clinician Ms. Rosado.[100] The notes evidently memorialize discussions and actions taken to evaluate, acutely treat, and refer E.H. to other inpatient treatment programs.[101] The notes also memorialize Mr. Humphrey's participation in E.H.'s treatment, his reticence about E.H. going to inpatient treatment out of state, and his increasingly frustrated interactions with hospital staff and OCS.[102]

Mr. Humphrey directs the Court to two phone conversations between Ms. Rosado and Ms. Straube on October 7 and 14, 2021. The October 7 entry describes a phone call from Ms. Straube to Ms. Rosado about E.H. Ms. Straube's notes are her recordings of Ms. Rosado's observations of: (1) E.H.'s demeanor, medications, and treatment; and (2) Mr. Humphrey's focus on E.H. receiving constant care and perceived superficial participation in therapy sessions at North Star Hospital.[103] The entry also includes Ms. Rosado's recommendation that E.H. would benefit from residential treatment and discussion of negative interactions between Mr. Humphrey and North Star Hospital staff.[104] The entry states that E.H. and Mr. Humphrey acknowledged spanking and physical punishment took place,

---

[100] Docket 44-1; Docket 49-2; Docket 44-3.

[101] Docket 49-1; Docket 49-2 at 1; Docket 49-3 at 1, 3–5.

[102] Docket 49-2 at 1; Docket 49-3; Docket 49-4.

[103] Docket 49-3.

[104] Docket 49-3 at 3–4.

but "no disclosures of any physical violence on dad's part" occurred.[105]

The October 14 activity note reflects a summary of a phone call from Ms. Rosado to Ms. Straube with a case update. Ms. Straube notes that Ms. Rosado reported that E.H. had been accepted into a residential treatment center in Missouri, but Mr. Humphrey would not consent to out-of-state treatment.[106] Ms. Rosado reported that E.H. had a "bad day," because Mr. Humphrey had stopped calling and was not answering calls from E.H.[107] When Mr. Humphrey did answer his phone, he told E.H. he was too busy to talk, and "[a]s a result, [E.H.] punched a hole in the wall."[108] Ms. Rosado expressed her belief that E.H. "is really trying," but that effort was not being reciprocated by Mr. Humphrey and "that the only reason that Dad is attending therapy is to keep up appearances[.]"[109] As recorded in the activity notes, the conversation then shifts and Ms. Rosado reports that E.H. is afraid to return home and he disclosed physical violence from his father.[110] Ms. Straube then "told [Ms. Rosado] not to discharge [E.H.] until she heard back from OCS" and that she would call "back once she has staffed with Supervisor PSS

---

[105] Docket 49-3 at 3–4.

[106] Docket 49-3 at 2.

[107] Docket 49-3 at 2.

[108] Docket 49-3 at 2.

[109] Docket 49-3 at 2.

[110] Docket 49 at 2–3.

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 24 of 29

Fujimoto."[111]   Mr. Humphrey contends that these were conclusory statements, which were later improperly presented to the court at the Emergency Custody Hearing held later that month.[112]

Mr. Humphrey contends Ms. Rosado "had no legal authority to communicate any decisions of Plaintiff regarding his son E.H."[113]   This unadorned, conclusory allegation fails to state a claim that Ms. Rosado, in the role of a state actor, violated his federal constitutional rights.   To the extent that Mr. Humphrey is trying to articulate that the Court should find that he has adequately alleged that Ms. Rosado satisfies the joint action test, the SAC and other documents before the Court do not support that argument.  Rather, the activity notes show conversations between a clinician at a private hospital and a state social worker.   These conversations do not demonstrate an agreement or meeting of minds indicative of a conspiracy to deprive Mr. Humphrey of his federal constitutional rights. Furthermore, and as previously discussed, Alaska law requires therapists who treat children to report any allegation of child abuse to the nearest OCS office.[114] Indeed, Alaska law makes mandatory child abuse reporters criminally liable,[115] if

---

[111] Docket 49 at 3.

[112] Docket 49 at 1.

[113] Docket 49 at 1.

[114] Alaska Stat. § 47.17.020(a).

[115] Alaska Stat. § 47.17.068.

they have "reasonable cause to suspect that a child suffered harm as a result of child abuse" and do not report it to OCS.[116]  The Ninth Circuit has observed that the "caselaw is clear that a private actor does not become a government agency simply by complying with a mandatory reporting statute."[117]  Healthcare and therapeutic workers are not considered state actors for purposes of Section 1983, "simply because [they] complied with state law requiring . . . personnel to report possible child [abuse or] neglect to Child Protective Services."[118]  Accordingly, as a mandatory child abuse reporter complying with Alaska state law, Ms. Rosado is not a state actor who may be held liable under Section 1983.  Therefore, Defendant Rosado must be **DISMISSED** from this action.

### E. Futility of Amendment

A "district court's 'decision to dismiss [an] amended complaint *with prejudice* [may be] appropriate in light of [plaintiffs'] repeated failure to cure the deficiencies in [their] pleadings.'"[119]  Further, a "district court may deny leave to amend when amendment would be futile."[120]  Mr. Humphrey has filed three complaints with the

---

[116] Alaska Stat. § 47.17.020(a).

[117] *United States v. Rosenow*, 50 F.4th 715, 730 (9th Cir. 2022).

[118] *Mueller v. Auker*, 700 F.3d 1180, 1192 (9th Cir. 2012); *see also Sawyer v. Legacy Emanuel Hospital & Health Center*, 418 F. Supp.3d 566, 572 (D. Or. 2019) (internal quotations and punctuation omitted) (establishing that "merely reporting suspected child abuse does not constitute state action for purposes of § 1983").

[119] *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (emphasis in original) (quoting *Neubronner v. Milken*, 6F.3d 666, 672 (9th Cir. 1993)).

[120] *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013).

Court, none of which have pleaded allegations sufficient to state a claim under Rule 8 or survive scrutiny under Rule 12(b)(6).

As previously discussed, OCS was previously dismissed with prejudice, because of Eleventh Amendment sovereign immunity. North Star Hospital is a private hospital and Ms. Rosado is a clinician and mandatory reporter of child abuse. No further facts could be plausibly alleged to demonstrate that the joint action exception applies such that the North Star Defendants should be considered state actors for purposes of § 1983. Accordingly, the Court does not grant leave to amend as to North Star Hospital and Ms. Rosado, and these Defendants, together with OCS, must be dismissed with prejudice. Any amended complaint shall not include any of these parties as a defendant.

### F. Leave to Amend

The Court grants leave to amend only as to Ms. Straube and the claim of judicial deception. As stated above, to sufficiently plead a judicial deception claim, a plaintiff must allege "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial deception."[121] A claim must be pleaded with sufficient factual detail to support a reasonable inference of liability. This means that Mr. Humphrey must provide

---

[121] *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022).

Case No. 3:22-cv-00009-SLG; *Humphrey v. Straube, et al.*
Order of Dismissal
Page 27 of 29

sufficient factual detail to support his allegation that Ms. Straube made a material representation under oath to a judicial officer in reckless disregard for the truth.

The SAC improves upon Mr. Humphrey's prior two complaints but remains sparse. A third amended complaint must identify each of the specific statements that Mr. Humphrey is alleging that Ms. Straube made under oath to the state court on October 26, 2021, or failed to make, that he asserts were material, false, and made by her in deliberate or reckless disregard of the truth based on the information known to Ms. Straube at that time.

Mr. Humphrey should carefully choose his exhibits, so the Court can understand the basis for Mr. Humphrey's allegation that Ms. Straube presented testimony to the state court that was deliberately or recklessly false at that time. At a minimum, this should include the Child in Need of Aid Petition, a transcript from the Emergency Hearing and the subsequent Temporary Custody Order. As previously discussed, an amended complaint replaces a prior complaint in its entirety.[122] When screening a third amended complaint, the Court will not rely on any prior complaints or previously filed exhibits.

### IV. CONCLUSION

The State Defendants' *Motion to Dismiss* at Docket 46 is **GRANTED**. The North Star Defendants' *Motion to Dismiss* at Docket 48 is **GRANTED**. The

---

[122] *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010); Local Civil Rule 15.1.

*Request for Judicial Notice* at Docket 52 is **DENIED**.  OCS, North Star Hospital and Ms. Rosado are **DISMISSED WITH PREJUDICE** from this action.  The Court grants Mr. Humphrey 30 days from the date of this order to submit a third amended complaint solely as to Ms. Straube, on the claim of judicial deception.

DATED this 21st day of August 2024, at Anchorage, Alaska.

<u>/s/ Sharon L. Gleason</u>
UNITED STATES DISTRICT JUDGE